**SO ORDERED.**

**SIGNED this 18 day of February, 2014.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

| | |
|---|---|
| IN RE: | |
| ROBIN DALE GRATHWOL,<br>    DEBTOR | CASE NO. 12-00294-8-SWH<br>CHAPTER 11 |
| ROBIN DALE GRATHWOL and ANN F.<br>GRATHWOL LIVING TRUST,<br>    Plaintiffs,<br>    v.<br>COASTAL CAROLINA DEVELOPERS,<br>INC.; HANOVER LAND, LLC; W and B<br>INVESTMENT COMPANY, INC.;<br>COSWALD, LLC; B. LEON SKINNER<br>and WALTER T. WILSON,<br>    Defendants. | Adversary Proceeding No.<br>13-00024-8-SWH |

_____

## ORDER ALLOWING MOTIONS TO DISMISS

Pending before the court is the motion to dismiss filed by the defendants Coastal Carolina Developers, Inc.; Hanover Land, LLC; W and B Investment Company, Inc.; Coswald, LLC; B. Leon Skinner; and Walter T. Wilson (collectively, "defendants"), and the plaintiffs' response in opposition to the motion. Motions to dismiss also were filed in two related adversary proceedings associated with the underlying bankruptcy case (AP Nos. 13-00023-8-SWH and 13-00025-8-SWH). The

defendants in all three of those proceedings (collectively, "the actions") filed a joint memorandum of law outlining the bases upon which they asserted that the court should dismiss all three actions for lack of subject matter jurisdiction. The debtor, on behalf of herself and the other plaintiffs in the actions, filed a joint memorandum of law in response. A hearing was held in Raleigh, North Carolina, on November 19, 2013. For the reasons that follow, the motions to dismiss will be allowed with respect to all three actions.

## BACKGROUND TO MOTIONS TO DISMISS

The debtor filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code on January 13, 2012, and the debtor's plan of reorganization was confirmed on November 26, 2012. On February 8, 2013, three separate adversary proceedings were filed by, or on behalf of, the debtor, summarized by the debtor/plaintiffs as follows:

1. 13-00023-8-SWH, Robin Dale Grathwol, shareholder of Coastal Carolina Developers, Inc. ("CCD") v. CCD; B. Leon Skinner; BLS Lands, LLC; Walter T. Wilson and Coswald, LLC – a shareholder derivative action brought by the debtor as one-third owner of CCD to collect damages for malfeasance and breach of fiduciary duty by the remaining shareholders/directors (the "shareholder derivative action" or "AP-23");

2. 13-00024-8-SWH, Robin Dale Grathwol and Ann F. Grathwol Living Trust v. CCD; Hanover Land, LLC; W and B Investment Co., Inc.; Coswald, LLC; B. Leon Skinner and BLS Lands, LLC, and Walter T. Wilson – an action for judicial dissolution of certain entities due to malfeasance and wasting of assets by other members (the "dissolution action" or "AP-24"); and

3.  13-00025-8-SWH, Legacy Group of NC, Inc. v. CCD – an action by the debtor's wholly owned development company to recover for breach of contract to provide certain development entitlements (the "breach of contract action" or "AP-25").

Plaintiffs' Mem. of Law in Opp. to Mot. to Dismiss at 2.

In their answers, defendants asserted a lack of subject matter jurisdiction under Rule 12(b)(1) as both a defense and as grounds for dismissal in the dissolution (AP-24) and breach of contract (AP-25) actions. Defendants did not specifically allege a lack of subject matter jurisdiction in the shareholder derivative action (AP-23), and instead moved to dismiss that proceeding under Rule 12(b)(6); however, those defendants subsequently joined in the joint memorandum of law filed in all three actions, which seeks dismissal under Rule 12(b)(1). A bankruptcy court may, *sua sponte*, consider the question of whether it has subject matter jurisdiction over a proceeding before it, which this court will do with respect to the shareholder derivative action. See Fed. R. Civ. P. 12(h)(3); see also, e.g., In re Woods, 130 B.R. 204, 206 (W.D. Va. 1990) ("It has long been established that a federal court may, at any time during the pendency of a case, either on a motion of one of the parties or its own motion, consider whether it has subject matter jurisdiction of that case.").

## DISCUSSION

Plaintiffs maintain that the court has subject matter jurisdiction over the proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a). Bankruptcy courts may exercise jurisdiction over civil proceedings arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). Plaintiffs do not suggest that their claims, all of which are based on state law, come within the ambit of "arising under" or "arising in" jurisdiction; rather, they maintain that this court has "related to" jurisdiction, within the meaning of both Schafer v. Nextiraone Federal, LLC,

3

2012 WL 2281828 *6-7 (M.D.N.C. 2012) and Valley Historic Ltd, P'ship v. Bank of New York, 486 F.3d 831 (4th Cir. 2007). The "burden of showing 'related to' jurisdiction is on the party asserting it." Schafer, 2012 WL 2281828 *7.

Plaintiffs rely primarily on Schafer for the proposition that the actions satisfy the test for "related to" jurisdiction, which is, they contend, "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Valley Historic, 486 F.3d at 836 (internal quotations omitted). Put another way, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and [it] in any way impacts upon the handling and administration of the bankruptcy estate." Id.

In Schafer, the district court found that "related to" jurisdiction was established with respect to the chapter 7 trustee's adversary proceeding against defendant BBNS (an entity that had partnered with the debtor in a federal Department of Defense contract), seeking to recover $3,000,000 on various state law theories. The specific issue before that court was whether BBNS could, on various jurisdictional grounds (none of which directly align with the issues in these proceedings), compel withdrawal of the reference to the bankruptcy court in favor of proceeding to trial in district court. The district court denied BBNS's motion, concluding that it "failed to carry its burden of demonstrating mandatory withdrawal." 2012 WL 2281828 *9. The court went on to conclude that the proceeding was not core, but was "related to" the bankruptcy case, such that the bankruptcy court could hear the proceeding and offer proposed findings of fact.

Ultimately, the Schafer court observed, "[i]t is plain that the outcome of the adversary proceeding here could alter the Debtor's rights and would impact the administration of the

4

bankruptcy estate by bringing into it sums of money constituting damages for the Trustee's claims."

2012 WL 2281828 *8. It is this basic premise that underscores all three of the actions brought by plaintiffs: In sum, plaintiffs' position is that any recovery coming in the direction of the debtor (or, in AP-25, to an entity she wholly owns), is an innately good thing, which leads to a "natural outcome" of larger and potentially faster payouts to the unsecured class. Plaintiffs' Mem. of Law in Opp. to Mot. to Dismiss at 13. Specifically, plaintiffs contend that the actions are "related to" the debtor's bankruptcy case because:

> [S]uccess in the Actions is important, if not essential, to the Debtor's completion of her required Plan payments before year 8 when she would no longer be entitled to receive a salary. The majority of the debtor's assets are tied up in the entities that she holds membership interests in and is pursuing this litigation on behalf of. All of the Actions were filed and are being pursued to maximize the value of the entities and untangle and disburse any recovery proceeds to grow the business activities of the entities and create additional cash flow and allow Debtor to make distributions to the Disbursing Agent and subsequently to the general unsecured creditors of Class 8. Additionally, unlike in *Valley Historic*, the Actions were filed before Debtor's Plan was substantially consummated.

Id. at 10.

In response, defendants argue that the court lacks subject matter jurisdiction to hear the proceedings under Rule 12(b)(1) and that the actions are not "related to" the bankruptcy case within the meaning of Valley Historic, particularly in light of the fact that the actions were filed post-confirmation and are, in the defendants' view, entirely disassociated from the plan itself. By way of overview, defendants assert:

> In the instant case (i) the claims comprising the Actions had vested in the Debtor at the time the Actions were filed; (ii) the Debtor's Confirmed Plan specifically provides that "[t]he Debtor proposes to make payments under the Plan from funds on hand and income derived from the continued operation of her business activities,"

5

> rather than the collection of pre-petition claims; [and] (iii) the Debtor has agreed to pay unsecured creditors *in full* from distributions and dividends originating from her business interests, with only a passing reference to "avoidance actions" under Sections 547 and 548 of the Bankruptcy Code and *no* mention of – or reliance on – any other state law action or claim. Moreover, at no point during this proceeding have the Actions been described, identified or valued in the Debtor's Schedules or Disclosure Statement. Quite simply, there is no conceivable basis to conclude that any creditor of this estate could have believed that it was to be paid from proceeds derived from the Actions, and therefore the Debtor/Plaintiffs cannot demonstrate that pursuit of the Actions "could conceivably have any effect on the estate being administered in bankruptcy."

Defs.' Joint Mem. of Law in Support of Mot. to Dismiss at 9 (internal citation omitted).

These actions, the defendants argue, are on-point with the facts and controlled by the legal analysis set out in Valley Historic. In that case, the debtor filed an adversary proceeding asserting breach of contract and tortious interference claims against the Bank of New York, after the debtor's plan had been confirmed and its creditors had been paid. There was, the court held,

> no conceivable bankruptcy administration purpose to be served by the Debtor's adversary proceeding *because the Plan made no provision for the use of any recovery from the adversary proceeding but instead provided for the satisfaction of the Debtor's obligations "entirely from the post-petition rents and earnings of the Debtor through the operation of its real estate*." Here, the Debtor had paid all its creditors, including the Bank before instituting the adversary proceeding, and the Plan was substantially consummated.

Valley Historic, 486 F.3d at 837 (emphasis added). The Valley Historic court focused on the apparent disconnect between the adversary proceeding and the debtor's plan; specifically, how "neither the Plan nor the order confirming the Plan provided that the breach of contract claim or the tortious interference claim would remain property of the bankruptcy estate following confirmation of the Plan." Id. at 838. Defendants maintain, correctly, that in this case, the debtor's plan includes

6

only a generalized reservation of the debtor's right to potentially pursue avoidance actions[1] and makes no specific provision for using recovery from actions of any kind to pay creditors.[2]  In addition, the debtor's post-confirmation reports reflect substantial payments to creditors, beginning with the first post-confirmation report filed for the fourth quarter of 2012, up through the most recent report, for the fourth quarter of 2013, which identifies disbursements of $1,210,834.44 for the quarter (including initial payment to the Class 8 holders of unsecured claims).  Under the policy followed by this court, substantial consummation of the plan, has, in fact, occurred, thus further aligning this matter with Valley Historic.

In response, plaintiffs insist that the causes of action, as well as any potential recovery therefrom, *were* incorporated into the debtor's plan, explaining that "[u]nlike the debtor in Valley Historic, Debtor did include, *although not in plain language*, the possibility that the recovery from the Actions would affect the implementation, execution, and administration of Debtor's confirmed plan because the payment[s] to general unsecured claimants are linked to distributions from entities in which Debtor has a membership interest or are wholly owned by the Debtor."  Plaintiffs' Mem. of Law in Opp. to Mot. to Dismiss at 12-13.  Plaintiffs also assert that "[e]ven if [the debtor] could make full payment without the aid of the Actions, which Debtor makes no representation that she

---

[1] Complicating matters further, these actions are not even avoidance actions (*i.e.*, actions brought by the debtor exercising the rights and powers of a trustee to avoid certain transfers pursuant to, for example, §§ 544, 547, 548, or 549).

[2] Although the debtor's plan states that "[t]he Debtor may investigate and pursue avoidance actions pursuant to 11 U.S.C. §§ 547 and 548," and that "[a]ny funds collected through such actions will be distributed in accordance with the priorities established by the Bankruptcy Code and Orders of this Court," in the section regarding the treatment of unsecured creditors, collected funds are not specifically allocated to any creditors in particular. More important, none of the proceedings at issue here have been brought pursuant to either §547 or § 548.

can or cannot do, success in the Actions would certainly make it more likely that she will be able to fulfill her obligations in a more expeditious manner." Id. at 14.

On both points, the court disagrees. The court is of the view that "in plain language" is the only known accepted method of communicating a debtor's intentions with respect to implementation, execution, and administration of a plan, and believes the debtor did, in fact, represent that she could make full payment without aid of the actions, by seeking and receiving confirmation of a plan that proposes to do precisely that. The debtor's plan simply states that "the Debtor proposes to make payments under the Plan from funds on hand and income derived from the continued operation of her business activities." Plan, Part V. Means of Implementation and Execution of Plan. It does not say that the plan will be funded from actions brought against the debtor's businesses and business partners, and no plain meaning analysis could interpret "operations" as meaning dissolution of one of these businesses![3]

---

[3] Indeed, in AP-24, plaintiffs seek dissolution of CCD, notwithstanding the fact that pursuant to the confirmed plan, the debtor will pay a debt she scheduled on behalf of Grathwol Property Holdings (no claim was filed for GPH, but the debt is set out as $257,000) in full, as follows: "Debtor shall pay fifty percent of the Net Development Profits (as defined below) paid to her from [CCD] toward this claim, until it is paid in full." Plan, Part III, Classification and Treatment of Classes of Claims and Interests, Class 7 ¶3.

Those profits are defined in connection with the general unsecured claims set out in Class 8: "The term 'Net Development Profits' means the profit distributions paid from the Development Companies [including CCD] which are attributable to and would otherwise have been payable to the Debtor, based on her ownership interest in the Development Companies, after (1) the payment of all debt service and operating expenses of the Development Companies, including any compensation for services paid to the Debtor, which may take the form of salary, guaranteed payments and/or distributions for services rendered; and (2) the funding of reasonable development and operating reserves." Id. Class 8 ¶3.b. The plan in no way suggests that the debtor will sue the very businesses from which she expects to receive operating profits.

The bottom line is that it appears to the court that the debtor, together with the other plaintiffs, seeks to pursue her old debts in an accommodating and convenient forum, without a precise plan or allocation for any recoveries that may be had, other than a generalized presumption that if money is brought into entities in which the debtor has an interest, that's probably a good thing. Nothing in the plan, for instance, requires that the related entities make any distributions to the debtor to fund her plan. Still, the debtor represents that she "intended then and now that 'income derived from continued operation of her business activities' to [sic] include pursuing claims held by the entities she owns or has a membership in through litigation and recovery of property or its monetary equivalent. All claims [by] Debtor or the entities, which are reduced to money judgments[,] increase the funds available for distribution to Class 8 claimants."[4] Plaintiff's Mem. of Law in Opp. to Mot. to Dismiss at 7 fn2.

This court's focus is, as it must be, upon the express terms of the debtor's confirmed plan and the jurisdictional bases, or lack thereof, for the adversary proceedings. Returning to the Fourth Circuit's analysis in Valley Historic, which this court considers to be entirely on point, the plain fact is that the debtor's state law claims have no discernable connection to the bankruptcy case or to the debtor's confirmed chapter 11 plan. The claims forming the bases of these adversary proceedings were pre-confirmation property of the estate, and thus, since they were not treated in either the plan or the order confirming the plan, they became property of the debtor. 11 U.S.C. § 1141(b). But, as

---

[4] The court notes that the debtor recovered the sum of $575,000.00 in the adversary proceeding she filed against Vieste Energy LLC (AP No. 13-00027-8-SWH), which was resolved through court-approved compromise on May 6, 2013. A review of the post-confirmation reports indicates that sum does not yet appear to be allocated toward payment of creditors, and its current disposition is unclear to the court, further attenuating the relationship between these APs and administration of the bankruptcy estate pursuant to the confirmed plan.

the Valley Historic court made clear: "[E]ven if the contract and tortious interference claims had remained in the bankruptcy estate post-confirmation, the Debtor would still have had to establish jurisdiction under § 1334(b), since § 1334(e) does not by itself create jurisdiction to conduct civil proceedings." 486 F.3d at 838.  Here, as discussed above, there is no "close nexus" between the debtor's bankruptcy case and any of the three actions, the actions are not "related to" the bankruptcy case, and the court must dismiss the actions for lack of subject matter jurisdiction.[5]

## CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss AP-23, AP-24, and AP-25 for lack of subject matter jurisdiction are **ALLOWED**.  This adversary proceeding, together with AP-23 and AP-25, is **DISMISSED**.

**SO ORDERED**.

### END OF DOCUMENT

---

[5] Lacking a jurisdictional basis upon which to do so, the court does not reach the separate question of whether grounds exist to dismiss AP-23 and AP-24 for failure to state a claim under Rule 12(b)(6), and also does not address the significance of the fact that the plaintiff in AP-25 is a corporation that has "no discernable connection to this Court or proceeding but for [the debtor's] ownership interest in it." Defs.' Joint Mem. of Law in Support of Mot. to Dismiss at 6 fn1.