UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| ROBIN DALE GRATHWOL as a Shareholder of Coastal Carolina Developers, Inc., <br><br> Appellant, <br><br> v. <br><br> COASTAL CAROLINA DEVELOPERS, INC., B. LEON SKINNER; BLS LANDS, LLC; WALTER T. WILSON, and COSWALD, LLC, <br><br> Appellees. | Case No. 7:14-cv-82-F |
| ROBIN DALE GRATHWOL and ANN F. GRATHWOL LIVING TRUST, <br><br> Appellants, <br><br> v. <br><br> COASTAL CAROLINA DEVELOPERS, INC.; W and B INVESTMENT COMPANY, INC.; COSWALD, LLC; B. LEON SKINNER, and WALTER T. WILSON, <br><br> Appellees. | Case No. 7:14-cv-83-F |
| LEGACY GROUP OF NC, INC., <br><br> Appellant, <br><br> v. <br><br> COASTAL CAROLINA DEVELOPERS, INC., <br><br> Appellee. | Case No. 7:14-cv-84-F |

These matters are before the court on appeals from the February 18, 2014, orders of the

United States Bankruptcy Court of the Eastern District of North Carolina allowing the Appellees' motions to dismiss. For the reasons discussed below, the court affirms the decisions of the Bankruptcy Court dismissing all three actions for lack of subject matter jurisdiction.

## I. PROCEDURAL AND FACTUAL HISTORY

Appellant Robin Grathwol ("Debtor") filed her voluntary petition under Chapter 11 of the Bankruptcy Code on January 13, 2012. *See* Voluntary Petition [DE-2-1].[1] Her plan of reorganization was confirmed on November 26, 2012, and provides that "[t]he Debtor proposes to make payments under the Plan from funds on hand and income derived from the continued operation of her business activities." *See* November 26, 2012, Order Confirming Plan [DE-2-8] at 10.

On February 8, 2013, three separate adversary proceedings were filed by or on behalf of Debtor, and are summarized as follows:

1. **13-00023-8-SWH, Robin Dale Grathwol, shareholder of Coastal Carolina Developers, Inc. v. Coastal Carolina Developers, Inc.; B. Leon Skinner; BLS Lands, LLC; Walter T. Wilson and Coswald, LLC** — a shareholder derivative action brought by Debtor, as one third owner of Coastal Carolina Developers, Inc., to collect damages for malfeasance and breach of fiduciary duty by the two remaining shareholders/directors [the "Shareholder Derivative Action"]
2. **13-00024-8-SWH, Robin Dale Grathwhol and Ann F. Grathwol Living Trust v. Coastal Carolina Developers, Inc.; Hanover Land, LLC; W and B Investment Company, Inc.; Coswald, LLC; B. Leon Skinner and Walter T. Wilson** — an action for judicial dissolution of certain legal entities due to malfeasance and wasting of assests by other members [the "Dissolution Action"]; and
3. **13-0025-8-SWH, Legacy Group of NC, Inc. v. Coastal Carolina Developers, Inc.** — an action by Debtor's wholly owned development company, Legacy Group of NC, Inc. to recover for breach of contract to provide certain development entitlements [the "Breach of Contract Action"].

---

[1] Unless otherwise indicated, all citations to the record correspond to Case No. 7:14-cv-82-F.

2

Plaintiffs' Mem. of Law in Opp. of Mot. to Dismiss [DE-3-12] at 2. The Defendants in Adversary Proceedings Numbers 13-00024-8-SWH and 13-00025-8-SWH filed motions to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1). The Bankruptcy Court directed the parties to brief certain issues, and the Defendants in all three of the aforementioned adversary proceedings filed a Joint Memorandum of Law in Support of Motions to Dismiss [DE-3-11]. The Debtor, on behalf of herself and the other Plaintiffs, filed a memorandum in opposition [DE-3-12]. The Honorable Stephani W. Humrickhouse, United States Bankruptcy Judge, held a hearing on the motions to dismiss on November 19, 2013.

On February 18, 2014, the Bankruptcy Court issued orders allowing the motions to dismiss as to all three adversary proceedings, concluding that the bankruptcy court lacked subject matter jurisdiction over the actions. Specifically, the Bankruptcy Court found that Appellants had failed to establish "related to" jurisdiction under 28 U.S.C. § 157(a). Applying the Fourth Circuit's opinion in *Valley Historic Limited Partnership v. Bank of New York*, 486 F.3d 831 (4th Cir. 2007), the Bankruptcy Court found that there was a disconnect between the adversary proceedings and the Debtor's plan, and that the plan had been substantially consummated. Finding that there was no "close nexus" between the adversary proceedings and the Debtor's bankruptcy plan, the Bankruptcy Court dismissed the adversary proceedings for lack of subject matter jurisdiction. Appellants timely filed their notices of appeal as to all three adversary proceedings.

## II. STANDARD OF REVIEW

The district court sits as an appellate court in bankruptcy under 28 U.S.C. § 158(a), and reviews findings of fact for clear error and conclusions of law *de novo*. *See* 28 U.S.C. § 158(a); *Kielisch v. Educ. Credit Mgmt. Corp.*, 258 F.3d 315, 319 (4th Cir. 2001). The existence of subject

matter jurisdiction is a question of law, and accordingly, is reviewed *de novo*. *Educ. Credit Mgmt. Corp. v. Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010).

## III. ANALYSIS

Appellants argue that the Bankruptcy Court erred in determining that it lacked subject matter jurisdiction over the adversary proceedings. In support of this argument, Appellants contend that the Bankruptcy Court should have found that "substantial confirmation" of the Debtor's Plan had not occurred, which they assert supports their argument that the Bankruptcy Court had "related to" jurisdiction over the adversary proceedings. The Appellants also contend that the adversary proceedings could have a "conceivable effect" on the Bankruptcy Estate. Finally, Appellants contend that the Bankruptcy Court should have found that both the Plan and the order confirming the Plan reserved jurisdiction over the Debtor's state-law causes of action.

### A.    Law regarding jurisdiction

To assess the parties' arguments, this court finds it necessary to set forth the governing law of subject matter jurisdiction, as provided by the United States Code and interpreted by the Fourth Circuit Court of Appeals.

The Bankruptcy Court derives its jurisdiction from this district court. *See* 28 U.S.C. § 157. Section 1334(b) of Title 28 of the United States Code, in turn, provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Accordingly, this court, and therefore the Bankruptcy Court, has jurisdiction of proceedings "arising under," "arising in," or "related to" a corresponding Title 11 bankruptcy case. In this appeal, the parties do not contend that the Bankruptcy Court had either "arising under" or "arising in" jurisdiction. This court's focus, accordingly, is on the question of

4

whether "related to" jurisdiction exists as to these post-confirmation adversary proceedings.

The Fourth Circuit has explained that in the pre-confirmation context, "related to" jurisdiction is broad in scope, and "'the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*'" *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celetox Corp.)*, 124 F.3d 619, 625 (4th Cir. 1997) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). In the post-confirmation context, however, the Fourth Circuit has adopted a more narrow approach to "related to" jurisdiction, explaining that "for 'related to' jurisdiction to exist at 'the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process—there must be a close nexus to the bankruptcy plan or proceeding.'" *Valley Historic*, 486 F.3d at 836 (quoting *Binder v. Price Waterhouse & Co. (In re Resorts, Int'l)*, 372 F.3d 154, 167 (3d Cir. 2004)). Generally, this means that matters affecting "'the interpretation, implementation, consummation, execution or administration of the confirmed plan will typically have the requisite close nexus.'" *Id.* at 836-37 (quoting *In re Resorts*, 372 F.3d at 167). The Fourth Circuit has explained the more narrow interpretation is necessary in the post-confirmation context to "insure[] that the proceeding serves a bankruptcy purpose on the date the bankruptcy court exercises that jurisdiction." *Id.* at 837.

In *Valley Historic*, the Fourth Circuit determined that this close nexus was not present. In that case, the debtor financed the acquisition and renovation of certain real property, in part, via a loan issued by the Bank of New York. The debtor and the Bank of New York disagreed about the terms of the loan agreement, resulting in the Bank of New York issuing the debtor a notice of default, and the debtor subsequently filing a Chapter 11 petition in response. *Id.* at 834. The debtor's confirmed plan granted the Bank of New York an allowed secured claim in the amount of $967,148.17, but

provided that the court would fix and liquidate the amount of the Bank of New York's claim subject to the debtor's claims which would be liquidated at another date via an adversary proceeding. *Id.* The plan also provided for the bankruptcy court to retain jurisdiction over the debtor's anticipated adversary proceeding against the Bank of New York. *Id.* The plan did not, however, "provide for the use of any recovery from the adversary proceeding but instead provided for the satisfaction of the [d]ebtor's obligations 'entirely from the post-petition rents and earnings of the [d]ebtor through the operation of its real estate.'" *Id.* After confirmation, the debtor sold the real property and used the proceeds to make the payments due under the plan, including payments due to the Bank of New York. The debtor thereafter brought an adversary proceeding for breach of contract and tortious interference against the Bank of New York, alleging that the Bank's pre-petition conduct drove the debtor into bankruptcy.

The Bank moved to dismiss the adversary proceeding for lack of subject matter jurisdiction, which was denied by the bankruptcy court. The district court reversed, and the Fourth Circuit affirmed the district court's decision on the jurisdictional issue. In finding that there was no "close nexus" between the adversary proceeding and the bankruptcy plan, the Fourth Circuit explained:

> We find no conceivable bankruptcy administration purpose to be served by the Debtor's adversary proceeding because the Plan made no provision for the use of any recovery from the adversary proceeding but instead provided for the satisfaction of the Debtor's obligations "entirely from the post-petition rents and earnings of the Debtor through the operation of its real estate." Here, the Debtor had paid all its creditors, including the Bank before instituting the adversary proceeding, and the Plan was substantially consummated.

*Id.* at 837. The Fourth Circuit also rejected the debtor's argument that it was proper for the bankruptcy court to exercise jurisdiction pursuant to the plan's retention of jurisdiction provision, explaining "neither the parties nor the bankruptcy court can create § 1335 jurisdiction simply by

6

inserting a retention of jurisdiction provision in a plan of reorganization if jurisdiction is otherwise lacking . . . ." *Id.*

With the instructive *Valley Historic* opinion in mind, the court will consider the parties' arguments.

**B.    Analysis of jurisdiction**

Appellants argue that the Bankruptcy Court erred in making two findings, which in turn led the Bankruptcy Court to erroneously conclude that it lacked subject matter jurisdiction over the adversary proceedings. Namely, Appellants argue the Bankruptcy Court erred in finding that (1) substantial consummation of the Bankruptcy Plan had occurred, and (2) the confirmed Plan did not sufficiently reserve jurisdiction over the debtor's state law causes of action. The upshot of Appellant's argument is that if the Bankruptcy Court had found differently as to these two issues, it would have further supported Appellant's arguments that "related to" jurisdiction is present. Finally, Appellants assert that "related to" jurisdiction does, in fact, exist as to all three adversary proceedings.

The Appellants' argument regarding the reservation of jurisdiction is a non-starter. First, this court cannot discern where in the Bankruptcy Court's order that it determined that the confirmed plan did not sufficiently reserve jurisdiction over the state law causes of action. The Bankruptcy Court *did* observe that the Plan includes "only a generalized reservation of the debtor's right to potentially investigate and pursue avoidance actions and makes no specific provision for using recovery from actions of any kind to pay creditors," and that because the claims were not addressed in the Plan or the Order confirming it, they became property of the debtor. *In re Grathwol*, 505 B.R. 205-06 (Bankr. E.D.N.C. 2014). This appears to be a different issue than whether the Plan contained

a retention of jurisdiction provision applicable to the claims asserted in the adversary proceedings. *See* Appellants' Brief [DE-11] at 13 (quoting Part XII of the Plan, Retention of Jurisdiction). Indeed, in *Valley Historic*, the plan contained an express provision retaining jurisdiction over the specific adversary proceeding. 486 F.3d at 834. This retention of jurisdiction provision, however, did not suffice to establish jurisdiction because "neither the parties nor the bankruptcy court can create § 1334 jurisdiction by simply inserting a retention of jurisdiction provision in a plan of reorganization if jurisdiction is otherwise lacking . . . ." *Id.* Thus, whether the Plan's retention of jurisdiction section can be construed as applying to the claims asserted in the adversary proceedings is besides the point.

Substantial consummation, however, *is* something that is relevant to the court's analysis of "related to" jurisdiction. *See Valley Historic*, 486 F.3d at 837. Under Chapter 11 of the Bankruptcy Code, "substantial consummation" is defined to mean:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or the management of all or substantially all of the property dealt with by the plan; and
> (C) commencement of distribution under the Plan.

11 U.S.C. § 1101(2). All three prongs of section 1101(2) must be satisfied before a plan is considered substantially consummated. *In re Dean Hardwoods*, 431 B.R. 387, 391 (Bankr. E.D.N.C. 2010). With regard to the third prong, the practice of the Bankruptcy Court for the Eastern District of North Carolina is to consider "the commencement of distribution under the Plan" to mean "the commencement of distribution to all or substantially all creditors." *Id.* at 391 n.2 ("Local practice is that substantial consummation does not occur until a debtor has made at least one payment (or executed a promissory note and/or security document) to each class in accordance with its confirmed

8

plan.").

In these proceedings, the Bankruptcy Court found that "substantial consummation" had occurred because "substantial payments" had been made to creditors under the Plan, "including initial payment to the Class 8 holders of unsecured claims." *In re Grathwol*, 505 B.R. 201, 205 (Bankr. E.D.N.C. 2014). The record reflects, however, that the initial payments to the Class 8 holders of unsecured claims on December 16, 2013, over 8 months after the adversary proceedings were initiated. *See* Chapter 11 Post Confirmation Report [DE-2-10]. In arguing that substantial consummation had not occurred, Appellants implicitly are contending that the relevant time to assess substantial consummation is at the time the adversary proceeding is filed, and not some later date. The court agrees. *See In re Celotex Corp.*, 124 F.3d 619, 626 (4th Cir. 1997) (explaining that the general rule is that where a court has bankruptcy subject matter jurisdiction at the outset of an adversary proceeding that jurisdiction is not divested by subsequent events). The court also agrees with Appellants that at the time these adversary proceedings were commenced, substantial consummation had not yet occurred, in that the general unsecured creditors had not *yet* received a payment owed to them under the Plan.

Nevertheless, the court agrees with Appellees that substantial consummation of a bankruptcy plan is not dispositive to the question of "related to" jurisdiction in the post-confirmation context. Rather, substantial consummation is just part of the court's inquiry as to whether adversary proceedings concern matters affecting "the interpretation, implementation, consummation, execution or administration of the confirmed plan." *Valley Historic*, 486 F.3d at 836-37. Undertaking this inquiry, this court reaches the same conclusion as the Bankruptcy Court: the adversary proceedings lack the requisite "close nexus" to the Plan or bankruptcy proceeding.

Namely, the Plan stated that the "Debtor proposes to make payments under the Plan from the funds on hand and income derived from the continued operation of her business activities." Plan, Part V Means of Implementation and Execution of Plan [DE-2-8]. Thus, as in *Valley Historic*, the Plan makes "no provision for the use of any recovery from the adversary proceeding[s]," 486 F.3d at 837, and instead makes clear the Plan will be funded by the Debtor's regular business activities. It strains the interpretation of "continued operation her business activities" to include all manner of litigation brought against the debtor's businesses and business partners. Given that the Plan provides no indication that the Debtor intended to fund the Plan through pursuing any state-law actions, this court cannot view the adversary proceedings as being closely related to the Plan itself.

Which leaves Appellants' essential assertion: success in the adversary proceedings could "alter the [Debtor's] liabilities by providing additional funds to make payments to general unsecured creditors more quickly . . . ." Appellants' Brief [DE-11] at 12. Most courts, however, have found that the mere potential to increase recovery for creditors is insufficient to establish a close nexus. *See, e.g., Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 n.1 (9th Cir. 2005) ("[W]e are not persuaded by the Appellees' argument that jurisdiction lies because the action could conceivably increase the recovery to the creditors. As other circuits have noted, such rationale could endlessly stretch a bankruptcy court's jurisdiction."); *In re Resorts*, 372 F.3d at 170 ("[I]f the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant. Such a result would widen the scope of bankruptcy court jurisdiction beyond what Congress intended for non-Article III bankruptcy courts."); *BWI Liquidating Corp. v. City of Rialto (In re BWI Liquidating Corp.)* 437 B.R. 160, 166 (Bankr. D. Del. 2010). This court agrees with those courts that the mere possibility

of increasing the recovery to the creditors is insufficient, standing alone, to establish the "close nexus." Nor have Appellants otherwise established the necessary close nexus between the Plan or bankruptcy proceedings and the adversary proceedings. Without a "close nexus" to the Plan or the bankruptcy proceeding, this court—and therefore the Bankruptcy Court—lacks subject matter jurisdiction over the adversary proceedings. As such, the Bankruptcy Court's orders allowing the motions to dismiss for lack of subject matter jurisdiction in Adversary Proceedings 13-00023-8-SWH, 13-00024-8-SWH, and 13-00025-8-SWH are AFFIRMED.

## IV. CONCLUSION

For the foregoing reasons, the orders of the Bankruptcy Court in Adversary Proceedings 13-00023-8-SWH, 13-00024-8-SWH, and 13-00025-8-SWH dismissing the actions for lack of subject matter jurisdiction are AFFIRMED. The Clerk of Court is DIRECTED to docket this order in each of Case Nos. 7:14-cv-82-F, 7:14-cv-83-F, and 7:14-CV-84-F.

SO ORDERED.

This the 9th day of January, 2015.

James C. Fox
Senior United States District Judge